UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

KELLY MANNO,

                            Plaintiff,

  - against-

MICHAEL CHE CAMPBELL p/k/a MICHAEL CHE,
REGGIE CONQUEST, UNIVERSAL TELEVISION
LLC, NBCUNIVERSAL MEDIA, LLC, THE
BROADWAY VIDEO GROUP, INC., LEATHER SUIT,
INC., IRONY POINT, LLC, WARNERMEDIA, LLC
d/b/a HBO MAX, and DOES 1-10;

                            Defendants.

------------------------------------------------------------------X

Index No. 21-cv-7666

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Kelly Manno ("Manno"), by and through her undersigned attorneys, hereby files this Complaint against defendants Michael Che Campbell p/k/a Michael Che ("Che"), Reggie Conquest ("Conquest"), Universal Television LLC, NBCUniversal Media, LLC, The Broadway Video Group, Inc., Leather Suit, Inc., Irony Point, LLC, WarnerMedia, LLC d/b/a HBO Max and Does 1-10 (collectively, "Defendants"), and alleges as follows:

## NATURE OF THIS ACTION

1. This is an action for willful copyright infringement. Manno is the creator and owner of all rights arising from a series of short-form motion picture works entitled "HomeGirl Hotline" (the "Works"), and holds a U.S. Copyright Registration (PA 2-308-699) in connection with the first of such skits.[1] The Works depict a fictional service by which people unable to cope with certain social situations can call a hotline and order a "home girl" to come to a certain

---

[1] An application for registration of the second skit is pending before the U.S. Copyright Office.

location and solve their problems for them.

2. Manno is a popular Internet content creator, with (as of September 12, 2021) 1.3 million followers on TikTok, 25,700 followers on Instagram and 4,900 followers on Facebook.

3. The first of the Works, for which a U.S. Copyright Registration has issued, includes the catch phrase "Thank you HomeGirl Hotline!"

4. Manno posted the first of the Works on or about August 9, 2020 on three video services: TikTok, Instagram and Facebook. The video is accessible to anyone who accesses one of these services, without the need to log in or subscribe. As reflected in the screen shots below, on TikTok alone (as of September 12, 2021) it has been viewed 246,800 times, received 57,700 "likes" and 960 comments, and has been forwarded 3,406 times.



2



5. Manno posted the second of the Works on or about September 4, 2020 to the same three video services: TikTok, Instagram and Facebook. As with the first video, the second video is accessible to anyone who accesses one of these services, without the need to log in or subscribe. As reflected in the screen shots below, on TikTok alone (as of September 12, 2021) it has been viewed 580,600 times, received 122,600 "likes" and 1,969 comments, and has been forwarded 8,364 times.





6. Defendants are the creators, producers and broadcasters of a television program entitled "That Damn Michael Che" (the "Program") which was released on the HBO Max streaming platform on or about April 16, 2021.

7. The 23-minute sixth episode of the Program, entitled "Only Built 4 Leather Suits" (the "Episode"), includes four segments regarding "homegrrl," a fictional service by which people unable to cope with certain social situations can use an app on their mobile phones to order a "home girl" to come to a certain location and address certain types of problems. Each segment ended with a variation on the phrase "Thank you homegrrl," as reflected in the screen shots below:







8. Defendant Che even discusses the skit during the Episode and the need to "call your home girl":





9. Manno seeks the maximum damages available to her for Defendants' past and ongoing willful copyright infringement.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

11. Venue in this district is proper as to Defendants pursuant to 28 U.S.C. § 1391(b)(3) and New York Civ. Prac. L. & R. § 302(a)(3)(i) and (ii), because each of the Defendants regularly does and solicits business, and engages in a persistent course of conduct, and derives substantial revenue from goods used or consumed or services rendered, in the state of New York, and because each of the Defendants expects or should reasonably expect its services to have consequences in the state of New York, and because each of the Defendants derives substantial revenue from interstate and international commerce.

## THE PARTIES

12. Plaintiff Kelly Manno is an individual residing in St. Charles, Missouri.

13. Defendant Michael Che Campbell p/k/a Michael Che is an individual residing and/or working, upon information and belief, in New York, New York.

14. Defendant Reggie Conquest is an individual residing and/or working, upon information and belief, in New York, New York.

15. Defendant Universal Television LLC is a New York limited liability company with offices at 100 Universal City Plaza, Universal City, California 91608.

16. Defendant NBCUniversal Media, LLC is a Delaware limited liability company with offices at 30 Rockefeller Plaza, New York, New York 10112.

17. Defendant The Broadway Video Group, Inc. is a Delaware corporation with offices at 610 Fifth Avenue, Suite 612, New York, New York 10020.

18. Defendant Leather Suit, Inc. is a New York corporation with offices c/o ML Management Partners, LLC, 888 Seventh Ave 4th Floor, New York, New York 10106. Defendant Che is the Chief Executive Officer of Leather Suit.

19. Defendant Irony Point, LLC is a New Jersey limited liability company with offices at 122 West 26th Street, Rm 903, New York, New York 10001.

20. Defendant WarnerMedia, LLC d/b/a HBO Max is a Delaware limited liability company with offices at 30 Hudson Yards, 500 W 33rd St, New York, 10001. WarnerMedia sells monthly subscriptions to its customers, and broadcasts motion pictures and television to those customers over the Internet to computers, tablets, mobile phones and other Internet-enabled devices. WarnerMedia's service is provided throughout the United States and in many countries throughout the world.

21. Defendants Does 1-10 are people and/or entities who, upon information and belief, were complicit in, aided and abetted, and/or benefitted from, the wrongful actions of the other Defendants.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Direct Copyright Infringement)**

22. Manno repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth herein.

23. Defendants, without the permission or consent of Manno, and without authority, are publicly performing and purporting to authorize the public performance of the Episode, which are an infringement of Manno's registered copyrighted Works. Defendants cause the infringing Episode to be publicly performed upon request by users. Defendants' conduct constitutes direct infringement of Manno's exclusive rights under the Copyright Act, including but not limited to: (A) the rights to publicly perform her Works, 17 U.S.C. § 106(4) (the copyright owner has the exclusive right to perform and authorize others to perform the copyrighted work publicly); and (B) the rights to prepare derivative Works, 17 U.S.C. § 106(2) (the copyright owner has the exclusive right to prepare and authorize others to prepare derivative

works based on a copyrighted work).

24. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Manno.

25. As a direct and proximate result of Defendants' infringement of Manno's copyright and exclusive rights under copyright, Manno is entitled to her actual damages plus Defendants' profits from infringement, as will be proven at trial, pursuant to 17 U.S.C. § 504(b).

26. In addition to actual damages, Manno has been harmed in multiple ways, including but not limited to the loss of value of the Works and to her other works due to the availability of the infringing Episode, and harm to Manno's reputation as an original content creator due to the availability of the infringing Episode without provision of credit to Manno.

27. Defendants' conduct has caused, is causing, and unless enjoined by this Court, will continue to cause Manno great and irreparable injury that cannot fully be compensated or measured in money. Manno has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Manno is entitled to a permanent injunction requiring Defendants to immediately stop making the Episode available for broadcast through the HBO Max service or any other service.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Contributory Copyright Infringement)**

28. Manno repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth herein.

29. HBO Max's subscribers have infringed and are infringing Manno's rights in its registered copyrighted Works by, *inter alia*, directing the service to publicly perform the Episode, which infringes the Works.

30. HBO Max's subscribers are therefore directly infringing Manno's exclusive right of public performance, under 17 U.S.C. § 106(4).

31. Defendants are liable as contributory copyright infringers for the infringing acts of HBO Max's subscribers. Defendants enable, induce, facilitate, and materially contribute to each act of infringement by the HBO Max subscribers.

32. Defendants have actual and constructive knowledge that the HBO Max subscribers are employing the HBO Max service to publicly perform the Episode, which infringes Manno's copyrighted Works.

33. Acting with this actual and constructive knowledge, Defendants enable, facilitate, and materially contribute to the HBO Max subscribers' copyright infringement, which could not occur without Defendants' enablement.

34. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to Manno's rights.

35. As a direct and proximate result of Defendants' infringement of Manno's copyright and exclusive rights under copyright, Manno is entitled to her actual damages plus Defendants' profits from infringement, as will be proven at trial, pursuant to 17 U.S.C. § 504(b).

36. In addition to actual damages, Manno has been harmed in multiple ways, including but not limited to the loss of value of the Works and to her other works due to the availability of the infringing Episode, and harm to Manno's reputation as an original content creator due to the availability of the infringing Episode without provision of credit to Manno.

37. Defendants' conduct has caused, is causing and, unless enjoined by this Court, will continue to cause Manno great and irreparable injury that cannot fully be compensated or measured in money. Manno has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Manno is entitled to a permanent injunction requiring Defendants to immediately stop making the Episode available for broadcast through the HBO Max service or any other service.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Vicarious Copyright Infringement)

38.     Manno repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth herein.

39.     HBO Max's subscribers have infringed and are infringing Manno's rights in its registered copyrighted Works by, *inter alia*, directing the service to publicly perform the Episode, which infringes the Works.

40.     HBO Max's subscribers are therefore directly infringing Manno's exclusive right of public performance, under 17 U.S.C. § 106(4).

41.     Defendants are vicariously liable for the infringing acts of the HBO Max subscribers.

42.     Defendants have both the right and the ability to supervise the HBO Max subscribers' infringing conduct, and to prevent them from infringing upon Manno's copyrighted Works.

43.     Defendants significantly and directly benefit from the infringement by the HBO Max subscribers.

44.     Defendants derive substantial revenue tied directly to the volume of subscribers that can be attracted to the HBO Max service, which is accomplished in substantial part by offering the broadest spectrum of domestic and international content to the subscribers for broadcast.

45.     Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Manno.

46.     As a direct and proximate result of Defendants' infringement of Manno's copyright and exclusive rights under copyright, Manno is entitled to her actual damages plus

Defendants' profits from infringement, as will be proven at trial, pursuant to 17 U.S.C. § 504(b).

47. In addition to actual damages, Manno has been harmed in multiple ways, including but not limited to the loss of value of the Works and to her other works due to the availability of the infringing Episode, and harm to Manno's reputation as an original content creator due to the availability of the infringing Episode without provision of credit to Manno.

48. Defendants' conduct has caused, is causing and, unless enjoined by this Court, will continue to cause Manno great and irreparable injury that cannot fully be compensated or measured in money. Manno has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Manno is entitled to a permanent injunction requiring Defendants to immediately stop making the Episode available for broadcast through the HBO Max service or any other service.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kelly Manno prays for judgment against each of the Defendants as follows:

1. For a declaration that each of the Defendants has infringed and continues to infringe Manno's copyrights in the Works, both directly, contributorily and vicariously;

2. For a permanent injunction requiring that each of the Defendants and its agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, cease directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting and inducing or participating in the infringement of, any of Manno's copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created;

3. For actual damages plus Defendants profits from infringement, as will be proven at

trial, pursuant to 17 U.S.C. § 504(b);

4. For pre- and post-judgment interest according to law; and

5. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: New York, New York
September 14, 2021

PARNESS LAW FIRM, PLLC

By: /s/ Hillel I. Parness
Hillel I. Parness (HP-1638)
136 Madison Ave., 6th Floor
New York, New York 10016
(212) 447-5299
hip@hiplaw.com
*Attorneys for Plaintiff Kelly Manno*